IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **PREMIER GOLF MISSOURI, LLC** | ) | Case No.    09-44526-abf11 |
| | ) | |
| Debtor. | ) | |

### STALEY FARMS HOMEOWNER'S ASSOCIATION OPPOSITION TO MOTION TO ASSUME REAL ESTATE LEASE

Comes now interested party Staley Farms Homeowners' Association (hereafter "the Association") and states as follows in opposition to Debtor's Motion to Assume Real Estate Lease:

### Overview

The Association, not Staley Land Company, is the landlord under the subject lease. The Association opposes the Debtor's Motion for a variety of legal grounds, including that the lease has been terminated on two previous occasions (resulting in a pending state court unlawful detainer action), the Debtor is in default under the lease with no ability to cure, and assumption of the lease in not in the best interests of the estate because documents produced by Debtor indicate that it **lost $171,308.85** operating the facility during the last calendar year. The Association further opposes the Motion on equitable grounds in that the contentious relationship between landlord and tenant has resulted in five lawsuits in the first three years of a 99 years lease, and prompted a state court judge to conclude that the Debtor's operation of the Residents' Club demonstrated a "lack of wisdom," it led to "frustration and anger on the part of the homeowners," and that the homeowners' "visceral reaction toward the [Debtor] is … understandable." An example of such behavior includes Debtor's action of posting a "dead beat" list of homeowners who had paid dues which a court had determined were lawfully set by the Association, while refusing to pay a higher amount which Debtor, without lawful authority, sought to collect.

1

**Factual Misstatements**

Debtor's motion is replete with factual misstatements. While the Association believes Debtor's motion should be denied for a variety of reasons as set forth more fully below, many of factual misstatements are of such substantial importance as to merit the Court's immediate attention.

**Staley Land Company, LLC, is not the current landlord under the lease, as alleged in paragraph 4**. Staley Land Company acquired the Residents' Club in 2005, and entered into the subject lease. At the time of the transaction, however, the parties contemplated that Staley Land would convey the property to the Association, and that the Association would become the landlord. Staley in fact conveyed the Residents' Club to the Association in late 2005, and the Association has continuously been the landlord since that time.

**Debtor did not spend $2,000,000.00 to construct the Residents' Club, as alleged in paragraph 6.** The Staley Farms residential development and the Staley Farms Golf Course were both originally owned by an entity called Intell Staley Farms, LLC. The Debtor, Premier Golf Missouri, LLC, was formed in 2000. Although Intell and Premier had common or overlapping ownership, they are separate legal entities. In 2001, Intell sold the golf course to Premier, but retained the development. After that sale, Intell, not Premier, built the Residents' Club. In 2005, Intell changed its name to Double O Development. Double O then sold most of the development, specifically including the Residents' Club, to Staley Land. Staley paid a total of over $14,000,000.00, which included developed lots, undeveloped land, and the full value for the Residents' Club, which was approximately $1,700,000.00.

**The Association has no obligation to make support payments, as alleged in paragraph 6.** At the conclusion of paragraph 6, Debtor alleges that "Landlord paid for none of

2

these improvements and has no investment whatsoever in the Recreation Center, and in fact has failed to pay any support payments for the facility despite contractually agreeing to do so." The original landlord, Staley Land, did in fact pay full value (to Intell) for the Residents' Club,[1] as described in the preceding paragraph. Contemporaneously with its purchase of the development, Staley and Premier entered into a golf course development agreement which Premier contends obligates Staley to subsidize operation of the Residents' Club. While those parties dispute what, if anything, is due under that provision, the Association, as the current landlord, is not a party to that contract and has no subsidy or support obligation whatsoever to Premier.

**Contrary to its assertion in paragraph 9, Premier <u>is</u> in default under the lease.** On March 9, 2007, pursuant to the terms of the lease, the Association gave Premier written notice of numerous defaults under the lease and afforded a 30 day right to cure. The defaults were not cured and, on April 27, 2007, the Association delivered a notice of termination of the lease. On April 30, 2007, the Association filed an unlawful detainer action in state court, Clay County Missouri Case No. 07CY-CV04453. That action was thereafter stayed by the Court, pending resolution of other litigation initiated by Premier. The Debtor remained in possession during the stay. On April 7 of this year, the Association provided written notice to Premier of an entirely new series of defaults, based on mismanagement of the Residents' Club, along with notice of a 30 day right to cure. Those defaults were not cured, and the Association again exercised its right to terminate the lease on May 14, 2009. The Association then sought and obtained the Court's order lifting the stay in the unlawful detainer action, and obtained leave to file a first amended petition in that action to include both the April 27, 2007 and May 14, 2009 terminations. A true and correct

---

1 Debtor's Motion refers to the "Residents' Club," "Sports and Rec. Facility" and "Recreation Center." All of these terms refer to the same building and related amenities which are subject to the lease in question.

copy of that first amended petition is attached hereto as Exhibit A. That action was tentatively set for trial on January 19 and 20, 2010, when Premier filed for bankruptcy.

## Discussion

As indicated at the outset, the Association suggests that Debtor's Motion to Assume Lease should be denied for several reasons. Those are discussed individually below.

**There is no lease to assume.** The most fundamental reason for denial of the motion is that there is no executory contract or unexpired lease to assume. Pursuant to 11 USC § 365(c)(3), the a debtor may not assume a lease if "such lease is of nonresidential real property and has been terminated under applicable nonbankruptcy law prior to the order for relief." Debtor defaulted on the lease and the Association, pursuant to the terms of the lease, terminated it and filed for unlawful detainer in state court more than two years before the bankruptcy petition was filed, as described more fully in Exhibit A hereto.

**Debtor has no ability to cure existing defaults.** 11 USC § 365(b) prohibits a debtor in possession from assuming a nonresidential property lease which is in default for failure to operate in accordance with the terms of the lease unless the default "shall be cured by performance at and after the time of assumption." The defaults are listed in Exhibit A, and include operational failures which would require substantial capital outlays. Debtor has been unable or unwilling to cure these defaults in the more than 2 ½ years since the original notice of default, or in the nearly 9 months since the second notice of default and, according to Debtor's financial statements, it does not have the funds to cure the defaults now or in the foreseeable future. It is therefore barred from assuming the lease, even if it exists, by 11 USC § 365(b).

**Assumption of the lease is not in the best interests of the estate.** Regardless of whether the business judgment rule applies (and the Association suggests it does not for reasons set forth

below), prior to approving a request to assume a lease the Court must determine that the assumption would be in the best interests of the estate. *In re Crystalin, L.L.C*., 293 B.R. 455, 463-64 (8th Cir. 2003). The Debtor bears the burden of proof on that issue. *In re Global Int'l Airways*, 35 B.R. 881, 888 (Bankr.W.D.Mo.1983).

Prior to the bankruptcy filing, a dispute arose between Premier and the Association regarding which entity had the authority to set the dues which provide the revenue to finance operation of the Residents' Club. That issue was litigated in state court. In entering its judgment, the state court noted a key philosophical difference between the parties: "[The Association and Staley Land], on the one hand, see the Residents' Club as being exclusively for the use and enjoyment of the Staley Farms residents and their families. [Premier], on the other hand, believes the Residents' Club must be considered a part of the golf course as a whole, a for-profit enterprise with the cash flow generated by it being vital to support of the golf course and its clubhouse." *Staley Farms Homeowner's Assoc., et al. v. Premier Golf Missouri, LLC,* Clay County, Missouri Case No. 08CY-CV06641, Judgment March 16, 2009 (attached hereto as Exhibit B). The court went on to conclude that the Association, not Premier, has the right to set the dues. Thus, if allowed to assume the lease, Debtor would be obligated to operate the Residents' Club on essentially a break-even basis, based upon dues set by the Association, with long term obligations under a triple net lease for operational and capital improvement maintenance. Debtor's hope of using Residents' Club revenue to offset its other operational expenses has been expressly rejected by the state court.

Moreover, the Debtor is incapable of operating the Residents' Club efficiently. The Debtor produced financial documents in pending state court litigation indicating that, during 2008, it incurred a ***net operating loss of $171,308.85*** on the Residents' Club during 2008, based on over

5

$150,000.00 in dues revenue. The Association has spoken with Curry Investment Company, which operates dozens of similar facilities. Curry has indicated that it could, and would, operate the facility on a contract basis for less than the dues revenue.

**The business judgment rule is inapplicable.** While the Eighth Circuit generally applies the business judgment rule to requests to assume contracts, the rule is not applicable in the presence of bad faith or gross abuse of business discretion. *In re Crystalin, L.L.C*., 293 B.R. at 464. Debtor's bad faith is evidenced by its failure to maintain the premises as required by the lease, resulting in default and termination, as well as general mismanagement. As the Circuit Court found in *Staley Farms Homeowner's Assoc., et al. v. Premier Golf Missouri, LLC,* Clay County, Missouri Case No. 08CY-CV06641, based on evidence from Staley Farms residents and a petition signed by 121 other residents, the Debtor's operation of the Residents' Club demonstrated a "lack of wisdom," it led to "frustration and anger on the part of the homeowners," and the homeowners' "visceral reaction toward the [Debtor] is … understandable." Exhibit B. The Debtor has also exhibited bad faith in connection with the filing of this action, and other aspects of management.

*Bad Faith Transfer of Assets*

Staley Land sought to exercise its option on the Phase III ground, with closing scheduled for September of 2008. Within days prior to closing, Double O granted easements across the property to Debtor, for golf cart paths and water lines. These easements substantially reduced the development value of the land. Staley therefore filed suit against the Debtor and Double O in the Circuit Court of Clay County, Missouri, case number 08CY-CV08838, seeking specific performance of the option contract, and requesting that Double O be required to convey the property in fee simple. While that suit remained pending, and just two days before filing of the

6

instant bankruptcy petition, Double O conveyed the Phase III ground, <u>without consideration</u>, to Debtor.

This transfer without consideration is significant in at least two respects. First, the transfer itself is suspect, not only because it was without consideration, but also because the original scheme was to divert a substantial portion of the value of the asset to Debtor's principal. This scheme was to be accomplished through a simultaneously executed contract for the Debtor to resell the Phase III property to SF-38, LLC for $1,578,894.00 (the "SF-38 Contract"). Under the terms of the SF-38 Contract, SF-38 would pay the Debtor $1,000,000 at or before the transfer of the Real Estate. The remainder of the purchase price would be paid by SF-38's execution of a $360,000 promissory note to the Debtor and its assumption of a $218,894.00 note evidencing a debt purportedly owed Double O by the Debtor. The SF-38 Contract did not call for the Debtor to retain a lien in the Real Estate to secure payment of this $578,894 debt, and the $218,894.00 note purportedly owed by Debtor to Double O, is not listed in the Debtor's schedules.

SF-38 was formed on September 10, 2009, and has never had an operating agreement. Its sole member, Veto Enna, has represented, however, that he and Ostronic contemplated that the SF-38 operating agreement would provide that Ostronic would personally receive a 40 percent membership interest in SF-38 in exchange for forgiving the $218,894.00 debt to Double O and the $360,000 note to the Debtor.

On the day the Debtor's case was filed, the Debtor filed a Motion to Assume the SF-38 Contract. The Motion did not disclose that Ostronic would receive a 40 percent membership interest in SF-38 in exchange for $578,894.00 of the proceeds. Although the Motion to Assume was amended on October 13, 2009 to disclose that the parties contemplated that Ostronic would

7

receive an equity share in SF-38, it still failed to disclose that he would receive this share in exchange for forgiving a $360,000 promissory note payable to the Debtor.

The second sense in which the no-consideration transfer was in bad faith lies in its design to defraud potential creditors of Double O, by funneling Double O's assets through Premier and the Bankruptcy Court. In addition to the specific performance suit between Staley Land and Double O, as described above, Staley Land has asserted various other state court claims against Double O amounting to a total of several hundred thousand dollars. Double O's only known assets are the Phase III property and (if such exists) the $218,894.00 debt owed by Debtor to Double O, as referenced in the SF-38 contract. The scheme, if allowed, would therefore use the powers of the Bankruptcy court to make Double O judgment proof.

*Mismanagement- Water Theft*

Martin Ostronic, the Debtor's owner has been charged with felony theft pursuant to § 570.030, R.S.Mo. The indictment charges that for five years Ostronic illegally diverted millions of gallons of city water into an irrigation lake at the Staley Farm golf course, without paying for the water and without the consent of the City of Kansas City. On December 21, 2009, Mr. Ostronic pled guilty to those charges as filed, admitting in open court that he stole millions of gallons of water. Ostronic has also entered into a civil settlement regarding the water theft, on behalf of the Debtor, which includes settlement payments totaling over a quarter of a million dollars by the Debtor.

*Relationship Between the Parties*

A troubled relationship between the parties, including ongoing litigation and the potential for future litigation, provides a substantial basis for rejection of a contract. *In re Logical Software, Inc.*, 66 B.R. 683, 686 (Bkrtcy.D.Mass. 1986). At the time of filing of this case, at least four state court cases were pending between these parties.[2] Many involve at least some claims regarding operation of the Residents' Club, and construction of a lease that all agree is less that a model of clarity. Allowing assumption of this lease may well doom the parties to another 95 years of litigation.

For the foregoing reasons, interested party Staley Farms Homeowners' Association prays for the Court's order denying Debtor's Motion to Assume lease, along with such other and further relief as the Court deems just and proper.

    Respectfully Submitted,
    LAW OFFICES OF MICHAEL S. SHIPLEY, LLC


By:   /s Michael S. Shipley_____
       Michael S. Shipley      #33249
       204 A East Kansas
       Liberty, MO 64068
       (816) 781-0299 Telephone
       (816) 781-4088 Facsimile

       ATTORNEYS FOR STALEY FARMS
       HOMEOWNERS' ASSOCIATION

---

[2] *Premier Golf Missouri, LLC v. Staley Land Company, LLC*, Clay County, MO. Case No. 07CY-CV01502; *Staley Farms Homeowners' Association, Inc. v. Premier Golf*, Clay County, MO. Case No. 07CY-CV04453; *Staley Farms Homeowners' Association, Inc. v. Premier Golf*, Clay County, MO. Case No. 08CY-CV06641; *Staley Land Company, LLC v. Premier Golf*, Clay County, MO. Case No. 08CY-CV08838.

## CERTIFICATE OF SERVICE

      I hereby certify that on December 28, 2009, a true and correct copy of the above and foregoing was served upon all persons requesting Electronic Case Filing (ECF) notification in this case.

                                                /s/ Michael S. Shipley
                                                Michael S. Shipley